**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51996**

| | |
|---|---|
| In the Matter of: Jane Doe II and John Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) |
| JOHN DOE I and JANE DOE I, Husband and Wife, | ) ) |
| | ) |
| Petitioners-Respondents, | ) |
| | ) |
| v. | ) ) |
| JANE DOE (2024-31), | ) ) |
| Respondent-Appellant. | ) ) ) |

Filed: March 14, 2025

Melanie Gagnepain, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Calvin H. Campbell, Magistrate.

Judgment terminating parental rights, <u>vacated</u>.

Benjamin P. Andersen, Chief Twin Falls County Public Defender; Adam J. Ondo, Deputy Public Defender, Twin Falls, for appellant.

Wright Brothers Law Office, PLLC; Kyle E. Bastian, Twin Falls, for respondents.

---

TRIBE, Judge

Jane Doe (2024-31) appeals from the judgment terminating her parental rights. For the reasons set forth below, we vacate the judgment in this case.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

John Doe I (Father) and Jane Doe (Doe) were married and are the biological parents of two children born during the marriage. Father and Doe divorced in 2019. Father has since remarried Jane Doe I (Stepmother). Father and Doe were awarded joint legal and physical custody of the children. In 2020, the custody arrangement was modified due to Doe's inability to maintain steady employment and stable housing--she was being evicted from her residence due to her substance

1

use. Father was awarded sole legal and primary residential custody of the children and Doe was granted visitation. The new custody arrangement restricted both parents from consuming alcohol to the point of intoxication or using any illegal substance while caring for the children. Additionally, at the request of the other parent, Doe and Father could each be required to submit to a hair follicle drug test. Failing a drug test or failing to submit to a drug test would result in a forfeiture of all visitations until further order by the court. At least once, Doe failed to submit to a drug test when requested by Father.

Doe had been charged with several crimes. Doe pled guilty and was sentenced to a term of incarceration with the district court retaining jurisdiction (rider program). After the period of retained jurisdiction, Doe was placed on probation. Subsequently, Doe admitted to violating the terms of probation. The district court placed Doe back on probation on the condition that she complete a residential treatment program. After completing the treatment program, Doe began outpatient treatment; however, she missed several meetings.

In May 2023, Father and Stepmother filed a petition for termination and adoption of Doe's parental rights. The petition alleged abandonment as the only statutory basis for termination with a citation to Idaho Code § 12-2002(5). The petition did not include any citation to I.C. § 16-2005, the statute that sets forth the statutory grounds for terminating a party's parental rights. The magistrate court found that Doe had abandoned the children by failing to maintain a normal parental relationship and regular contact with the children without just cause. The magistrate court also found it is in the children's best interests for Doe's parental rights to be terminated. In June 2024, a judgment terminating Doe's parental rights was entered. Doe appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383,

386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Appellate courts indulge all reasonable inferences in support of the trial court's decision because, as the finder of fact, the trial court has the opportunity to observe the demeanor of witnesses, assess their credibility, and assess a witness's motive or prejudice. *In Re Doe*, 164

3

Idaho 511, 515, 432 P.3d 60, 64 (2018). This ability is "immensely important" in cases involving the termination of parental rights. *Id.*

There is no difference in the standards in reviewing a case based on a private termination as opposed to a termination pursued by the Idaho Department of Health and Welfare (Department). *Hofmeister v. Bauer*, 110 Idaho 960, 963-64, 719 P.2d 1220, 1223-24 (Ct. App. 1986) (applying clear and convincing evidence standard in private termination context and reasoning: "We see no reason why the parental interest should receive less protection from the risk of fact-finding error in a 'private' termination case than in a 'public' case."). This standard protects the constitutional rights of parents because, after termination, a former parent has no standing to seek involvement in the child's life. *Santosky*, 455 U.S. at 759.

## III.

## ANALYSIS

Doe argues that the magistrate court erred in terminating her parental rights pursuant to I.C. § 16-2005(1)(d) because it was neither pled in the petition nor discussed in the magistrate court's findings of fact and conclusions of law. Doe also argues that there is insufficient evidence to support several of the magistrate court's findings regarding that statutory basis for termination, insufficient evidence to find willful abandonment without just cause pursuant to I.C. § 16-2005(1)(a), and insufficient evidence in the record to support the magistrate court's finding that termination is in the best interests of the children. Finally, Doe argues that the magistrate court improperly shifted the burden of persuasion to Doe. Father contends that the magistrate court correctly found that Doe willfully abandoned the children pursuant to I.C. § 16-2005(1)(a) and considered I.C. § 16-2005(1)(d) as an alternative basis for termination. Father also contends that there is substantial and competent evidence in the record to support the magistrate court's factual findings that termination is in the best interests of the children. Finally, Father contends that the magistrate court did not shift the burden of persuasion to Doe.

### A. Idaho Code § 16-2005(1)(d)--Inability to Discharge Parental Responsibilities

Doe's argument regarding termination of her parental rights based on an inability to discharge her parental responsibilities is twofold: (1) the magistrate court could not terminate Doe's rights on a statutory basis that was not pled in the petition; and (2) the findings of fact do not support this statutory basis. The unpled ground for termination is set forth in I.C. § 16-

4

2005(1)(d) and states, "[t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child." The magistrate court found that Doe's rights were terminated "[p]ursuant to Idaho Code Section 16-2005 (1)(a), and (d)." Doe argues that this is improper because the only basis pled in the petition was abandonment, albeit without a citation to the abandonment subsection--I.C. § 16-2005(1)(a). Father argues that, while I.C. § 16-2005(1)(d) (inability to discharge parental responsibilities) was not expressly cited in the petition, the facts set forth in the petition provided Doe with notice that this was a possible statutory ground upon which her parental rights could be terminated. Additionally, Father argues that the magistrate court made several factual findings relevant to I.C. § 16-2005(1)(d).

Idaho Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, I.C. § 16-2006(h) provides that a "petition for the termination of the parent and child relationship shall include, to the best information and belief of the petitioner: . . . The grounds on which termination of the parent and child relationship is sought." Doe acknowledges that "a party is no longer slavishly bound to stating particular theories in its pleadings." *Seiniger Law Off., P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 246, 178 P.3d 606, 611 (2008). "The key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Id*. at 246-247, 178 P.3d at 611-612 (citation omitted).

The Idaho Supreme Court has routinely held that it is not necessary to allege precisely which subsections in I.C. § 16-2005 form the basis of a termination petition. *In re Doe II*, 169 Idaho 170, 178, 492 P.3d 1129, 1137 (2021). A simple and concise *statement of facts* is all that is necessary. *Id*. The requirement that a party does not need to plead the specific statutory basis upon which they are seeking to terminate parental rights is understandable in the context of a termination petition filed by the Department. In a Department-initiated termination, parent(s) have actual notice of the circumstances that brought the child within the purview of the Child Protection Act (CPA), and those grounds are often the same grounds upon which the Department later seeks to terminate parental rights. But it is difficult to reconcile the application of the liberal pleading standard to private termination of parental rights cases because of the different policy rationales

5

and the procedural disparities between private terminations when compared to Department terminations.

Doe contends that she was not on notice that I.C. § 16-2005(1)(d) (inability to discharge parental duties) would be considered for termination, because "abandonment [(I.C. § 16-2005(1)(a))] requires a court to look at the past acts and omissions of a parent" while Doe contends that I.C. § 16-2005(1)(d) requires the court to look at a "*future* inability to discharge parental responsibilities for a prolonged indeterminate period." Doe adds that, at trial, the focus was on her past acts and the evidence showed that Doe was no longer at risk of failing to complete the rider program because she had already completed it.

Father argues that "the petition included a number of factual allegations providing notice" that support his claims under both I.C. § 16-2005(1)(a) and I.C. § 16-2005(1)(d). However, Father fails to cite any specific factual assertions in the petition in support of his argument. Moreover, the petition is devoid of any citation to I.C. § 16-2005, generally, or to I.C. § 16-2005(1)(d), specifically. Rather, the petition pled "abandonment exists, within the meaning of Idaho Code § 12-2002(5)." However, I.C. § 12-2002(5) is not a statutory basis upon which a party's parental rights can be terminated. It was Father's responsibility to cite to the relevant statutory basis upon which he was seeking to terminate Doe's parental rights to provide her the notice that due process requires.

The factual recitations in the petition, which included Doe's incarceration, her drug use and allegations concerning her lack of communication with the children, were insufficient to provide her with notice that Father was alleging I.C. § 16-2005(1)(d) as a basis upon which to terminate her parental rights. While those facts may partially support an alternate basis for terminating Doe's parental rights, those facts did not provide sufficient notice of I.C. § 16-2005(1)(d).

The petition alleged that Doe "has been unable to maintain consistent employment, repeatedly evicted from her residence, engaged in illegal drug abuse, and convicted of multiple felony charges." The petition also referenced the custody agreement between the parties where Doe "was ordered to forfeit all visitation time with the [c]hildren if she failed to submit to a drug test." The petition lists one time in December 2020 when Doe refused to submit to a drug test, "thus forfeiting her visitation" with the children. Also included in the petition are facts related to

6

Doe's criminal history, including dates of arrests, forfeited bonds, failures to appear, denial of bond reductions, and convictions followed by periods of retained jurisdiction.[1] Finally, the petition alleges that Doe "has made no efforts to contact or otherwise communicate with the [c]hildren since approximately May of 2021."

Based on the limited facts set forth in the petition, Doe was not required to guess which unpled bases could be used to terminate her parental rights. The pleading standard "requires more than a naked recitation of facts from which a hyper-vigilant attorney could possibly foresee the possibility of a given cause of action." *Brown v. City of Pocatello*, 148 Idaho 802, 809-10, 229 P.3d 1164, 1171-72 (2010) (citation omitted). Where Father and Stepmother expressly alleged abandonment (although without citation to I.C. § 16-2005(1)(a)) and alleged facts that might support that basis, Doe had no reason to believe I.C. § 16-2005(1)(d) (inability to discharge parental duties) would be at issue.

A review of each party's proposed findings and closing arguments show that both parties addressed abandonment and just cause for abandonment; however, neither party cited to I.C. § 16-2005(1)(d) (inability to discharge parental duties). Father and Stepmother cannot now argue that a basis not listed, argued or relied upon by them in their petition (or their post-trial proposed findings of fact and conclusions of law) was an alternate basis for terminating Doe's parental rights. The theory that Doe's parental rights should be terminated for failing to discharge future parental duties (without I.C. § 16-2005(1)(d) having been pled) was not properly before the magistrate court. Father and Stepmother made no request for leave to amend the petition, thereby limiting the bases they alleged would support terminating Doe's parental rights.

Because the petition did not allege that Doe's parental rights were subject to termination pursuant to I.C. § 16-2005(1)(d), the magistrate court erred in terminating Doe's parental rights on that basis.

B.      **Idaho Code § 16-2005(1)(a)--Abandonment**

Doe argues that the magistrate court did not have substantial and competent evidence to find abandonment pursuant to I.C. § 16-2005(1)(a). Doe argues that she attempted to have regular

---

[1]     Doe's convictions, as stated in the petition, show they were entered approximately four days apart, therefore it is assumed that the periods of retained jurisdiction ran concurrently.

contact with the children and any failure to maintain such contact was due to Father's actions, which would suffice as just cause. Father argues that the evidence shows that Doe abandoned the children by failing to maintain a normal parental relationship with the children by continuing to abuse substances, failing to complete treatment, and failing and refusing to submit to drug tests. Further, Father argues that the evidence shows Doe made no attempt to contact the children for a year prior to when he filed the termination petition.

The magistrate court found:

> While it is true that there were multiple times that [Doe] requested and reached out to have contact with the children. A vast majority of those requests were denied by [Father]. However, the decision to deny contact was very much in [the children's] best interest. Each denial was due to the fact that [Doe] failed to stay drug and alcohol free for any meaningful period of time.

The magistrate court also found that the children faced potential "emotional harm" by Doe reentering their lives with the potential that she could have to be removed again due to her drug use. We agree that the magistrate court did not have substantial and competent evidence to find Doe lacked just cause for abandonment.

Abandonment requires a showing of a willful failure to maintain a normal parental relationship with the children for a period of one year. I.C. § 16-2002(5). Moreover, the defendant parent must be shown to not have just cause for the failure. *Id*. In the petition for termination of parental rights, filed May 15, 2023, Father claimed that Doe "has made no efforts to contact or otherwise communicate with the [c]hildren since approximately May of 2021." However, Father testified that "clearly" Doe tried to have contact with the children via phone conversation for at least a portion of the time he claimed she had no contact with the children but that he "didn't allow it." The magistrate court admitted text messages sent from Doe to Father from October and November 2021 where she asks him about the children. Father did not respond to these text messages. The magistrate court also admitted text messages Doe sent to Father in April 2022 telling him that she wanted to see the children. Again, Father did not respond.

Father was awarded sole legal and primary residential custody of the children and Doe was granted visitation. When Doe failed to comply with Father's request to submit to a drug test, she forfeited her visitation rights. The custody arrangement noted that "each party shall have telephone access with the [c]hildren at reasonable times and intervals when the [c]hildren are with the other

parent." At the time the petition was filed, the record and transcript indicate that Father was controlling any telephonic communication between Doe and the children. At trial, Father testified that, when Doe called in December 2022 for one of the children's birthdays, he hung up after learning it came from a correctional facility because it was not a reasonable or convenient time to call as he was with family "gathered around the dining room table and . . . lighting the candles on the cake and getting ready to sing [H]appy [B]irthday."

At trial, Father also acknowledged that he received a letter from Doe while she was incarcerated in December 2022. The letter stated that Father had "blocked" all of Doe's calls and that she wanted to send the children "letters, cards, [and] gifts" but that she "need[ed] to know [the children] will receive them [and] they aren't being thrown away." The magistrate court's finding that Father denied calls from Doe because she "failed to stay drug and alcohol free for any meaningful period of time" is inconsistent with Father's testimony. Father testified he did not allow the children to speak to Doe when she called because he "didn't feel it was in the best interests of the children to have telephone contact from [Doe] from prison." Considering Doe lacked custody or visitation rights and her only method of communication with the children was controlled by Father, his statement at trial that, denying Doe certain communications with the children (for not being convenient, a reasonable time, or in the best interests of the children) was not a justification for completely alienating Doe from the children. When directly asked whether Doe could have had communication with the children while she was incarcerated in 2022, Father says, "Yeah. No, I didn't allow it" but that "clearly, yeah. She tried."

It is not abandonment when the petitioning parent has actively prevented the noncustodial parent from having access to the children. Pursuant to the custody arrangement, Father was legally permitted to keep Doe from having custody or visitation with the children for failure to submit to a drug test; however, that applied only to in-person visits, not to all contact. Father cannot recognize Doe's attempts at phone communication with the children, deny that contact, then exploit that lack of contact as grounds for terminating Doe's fundamental right to parent. Doe has shown just cause for the failure to maintain a normal parental relationship by Father denying her attempts and pleas to communicate with the children.

9

Because the magistrate court did not have substantial and competent evidence to find that Doe lacked just cause under the abandonment statute, I.C. § 16-2005(1)(a),[2] the magistrate court erred in terminating Doe's parental rights. Therefore, we need not address the remaining arguments on appeal.

## IV.

## CONCLUSION

The magistrate court erred in concluding that Doe's rights could be terminated pursuant to I.C. § 16-2005(1)(d) (inability to discharge parental responsibilities) because Doe lacked notice that this was a basis to terminate her parental rights. The magistrate court did not have substantial and competent evidence to find that Doe abandoned the children pursuant to I.C. § 16-2005(1)(a) with respect to Father's allegation that she abandoned the children. Accordingly, the judgment terminating Doe's parental rights is vacated.

Judge HUSKEY and Judge LORELLO, **CONCUR**.

---

[2] Doe argues that the magistrate court did not have substantial and competent evidence to support three factual findings. Because each of those factual findings are not dispositive of the conclusion regarding the magistrate court's errors in finding the above-discussed statutory bases, we need not discuss them further.